# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 23-283V

| | |
|---|---|
| RYLAND BEUTZ,<br><br>　　　　　　　　Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>　　　　　　　　Respondent. | Chief Special Master Corcoran<br><br>Filed: January 31, 2025 |

*Glen Howard Sturtevant, Jr., Rawls Law Group (Richmond), Richmond, VA,* for Petitioner.

*Madylan Louise Yarc, U.S. Department of Justice, Washington, DC,* for Respondent.

### **FACT RULING ON ONSET**[1]

On February 27, 2023, Ryland Beutz ("Petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that she suffered a Table shoulder injury related to vaccine administration ("SIRVA") as a result of a Meningococcal B vaccine administered to her on September 30, 2021.[3] Pet. at 1, ECF No. 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

[3] Petitioner alternatively alleges that her SIRVA was caused-in-fact by the subject vaccination, or if her injury is found to be immunologic, neurologic, or genetic in nature, that the vaccination significantly aggravated her underlying disorder. *See* Pet.

For the reasons discussed below, I find it more likely than not that the onset of Petitioner's shoulder pain occurred within 48 hours of vaccination, as alleged.

## I. Relevant Procedural History

Shortly after initiating her claim, Petitioner filed affidavits and medical records, followed by a statement of completion. ECF Nos. 6-8, 14-15, 19. Respondent thereafter determined this matter was not appropriate for compensation. ECF No. 20. Respondent filed his Rule 4(c) Report in defense of this case on May 24, 2024. Respondent's Report, ECF No. 21.

Among other things, Respondent contends that the medical records do not support the conclusion that the onset of her pain occurred within 48 hours of vaccination. Respondent's Report at 14. Petitioner had a physical therapy ("PT") visit four days post vaccination without mentioning shoulder pain. *Id.* at 14-15. Then, when she called her primary care provider ("PCP")'s office roughly 11 days post vaccination, she reported only generalized symptoms, and did not seek shoulder-related care for a few days more. *Id.* at 15. And any allegations of Petitioner's pain beginning soon after vaccination made during her first treatment visit are inconsistent with her statement that she participated in volleyball practice right after her receipt of the subject vaccination. *Id.* (citing Ex. 3 at 12). The onset dispute is now ripe for consideration.

## II. Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, 2005 WL 6117475, at *19.

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Hum. Servs*., 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs*., 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014). The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Hum. Servs*., No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs*., 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### III. Relevant Factual Evidence

I make this finding after a complete review of the record to include all medical records, affidavits, and additional evidence filed, and in particular the following:[4]

- Petitioner received the subject vaccination on September 30, 2021, during a visit with her PCP for a 16-year-old well-child visit. Ex. 3 at 23.

---

[4] While I have reviewed all the evidence filed to-date in this case, only evidence related to onset will be discussed herein, though other facts may be provided as necessary.

- Petitioner maintains that "[a]fter [her] shot, the spot where the needle was injected burned badly and it turned into a very sharp pain. The pain did not get better throughout the day." Ex. 2 at 1. That night, "[t]he pain was so intense . . . that [she] cried to her mom about how much it hurt[,]" and she could not lift her arm without shooting pain. *Id.* She explained that her pain persisted "after two weeks," so she sought care. *Id.*

- Petitioner's mother authored an affidavit on her behalf attesting that "[i]mmediately following [the vaccination] appointment, [Petitioner] complained [to her] of severe pain and [that] she could not move her arm." Ex. 1 at 1. Petitioner's mother noted that they "did typical anti-inflammatory treatments for a couple days with no improvement." *Id.*

- Four days post vaccination, on October 4, 2021, Petitioner had a visit with her physical therapist for pre-existing and unrelated left knee pain. Ex. 4 at 9. Petitioner did not report left shoulder complaints during this visit.

- One week later, on October 11, 2021, Petitioner called her PCP's office reporting that it had been "[o]ver 3 days since [her] shot and [she had] general symptoms (such as muscle aches, headache, fussiness, chills) [that] are getting worse." Ex. 3 at 15. Left shoulder symptoms were not mentioned along with these other complaints. *See id.*

- On October 14, 2021 (now 14 days post vaccination), Petitioner returned to her PCP complaining of "left arm pain after her immunizations done a couple of weeks ago." Ex. 3 at 12. Petitioner's mother (also present during this visit) stated that Petitioner "had volleyball practice right after getting her immunizations done that day." *Id.* She was assessed with acute pain of the left shoulder and prescribed prednisone. *Id.*

- On March 25, 2022 (after a four-month gap in shoulder-related care), Petitioner had an initial PT evaluation. Ex. 4 at 5. She reported that her "[s]ymptoms started last fall after she received a shot/vaccination at her physical." *Id.* Specifically, she described "[i]nsidious onset after receiving [her] shot." *Id.* She endorsed pain throughout the left deltoid, upper trapezius, and collarbone, that was worse with activity, sharp and achy, and rated at a 2-10/10. *Id.* The assessment was "consistent with left shoulder pain; specifically throughout [the] deltoid [and] potential nerve irritability following [a left] shoulder injection/vaccination in the fall." *Id.* at 7.

4

- Petitioner had an orthopedic consultation on April 12, 2022. Ex. 13 at 33. She complained of "left-sided shoulder/neck pain since October" but that there was "no known injury or mechanism of action." *Id.*

- Petitioner began acupuncture treatment on April 28, 2022, and reported that she "received a vaccine [on] 9/30/2021 in [her] left shoulder. Immediately following the shot [she] had so much pain [she] couldn't move [her] arm." Ex. 5 at 2. She rated the pain at a 3-8/10. *Id.*

- During a neurology consultation on May 27, 2022, Petitioner reported "left-sided shoulder and neck pain since October 2021." Ex. 6 at 5. She did not describe a known "injury or mechanism of action EXCEPT she was given a vaccine in her [left] deltoid which became swollen, reddened, and exquisitely tender." *Id.* (emphasis in original). She also complained of headaches on the left side of her head. *Id.* Petitioner's mother added that "the only event they can correlate to [Petitioner's] shoulder pain and headaches is when she received a vaccine, she was unable to move her left arm for a few days following injection, her left arm 'swelled up' and [she] experienced sudden onset of zinging pains up her neck." *Id.*

- Following another six-month gap in treatment, on November 29, 2022, Petitioner visited a pain intervention specialist for chronic left shoulder pain. Ex. 7 at 17. She "correlate[d] her initial episode of pain with a vaccine approximately one year ago which resulted in swelling in the area." *Id.* Petitioner stated she was "unaware of the exact start date of her first symptoms." *Id.*

- Petitioner sought care with a new physical therapist on November 30, 2022. Ex. 7 at 11. She reported "left shoulder pain that started after a meningococcal vaccine before school started in 2021." *Id.* More so, "that her left shoulder swelled and was very painful for 2 weeks before going in for prednisone." *Id.*

- No other medical record or affidavit evidence regarding the onset of Petitioner's post vaccination shoulder injury has been filed.

## IV.  Finding of Fact Regarding Onset

A petitioner alleging a SIRVA claim must show that she experienced the first symptom or onset within 48 hours of vaccination (42 C.F.R. § 100.3(a)(XIV)(B) and 3(c)(10)(ii) (QAI criteria)). As stated above, Respondent contends that Petitioner's

5

medical records do not support that the onset of her pain occurred within 48 hours of vaccination. Respondent's Report at 14-15.

Respondent's objections are ultimately unpersuasive, however, when considered against the totality of the evidence. The aforementioned medical records, coupled with Petitioner's filed affidavits, establish that Petitioner consistently reported to treaters an onset close-in-time to vaccination, that she sought treatment within *two weeks* of the September 30, 2021 vaccination, and that she indeed was experiencing symptoms in the relevant timeframe. *See,* e.g., Exs. 1-2, Ex. 3 at 12; Ex. 4 at 5; Ex. 5 at 2.

The fact that Petitioner sought treatment within two weeks of her vaccination (on October 14, 2021) actually supports a finding of Table onset. In other cases, *significantly greater* delays did not undermine an otherwise-preponderantly-established onset showing consistent with the Table. *See,* e.g., *Tenneson v. Sec'y of Health & Hum. Servs.*, No. 16-1664V, 2018 WL 3083140, at *5 (Fed. Cl. Spec. Mstr. Mar. 30, 2018), *mot. for rev. denied,* 142 Fed. Cl. 329 (2019) (finding a 48-hour onset of shoulder pain despite a nearly six-month delay in seeking treatment); *Williams v. Sec'y of Health & Hum. Servs.*, No. 17-830V, 2019 WL 1040410, at *9 (Fed. Cl. Spec. Mstr. Jan. 31, 2019) (noting a delay in seeking treatment for five-and-a-half months because a petitioner underestimated the severity of her shoulder injury).

Likewise, the fact that Petitioner sought care with her physical therapist four days post vaccination (on October 4, 2021) without mentioning left shoulder pain does not detract from her arguments on onset, as it was a regularly-scheduled visit for unrelated and pre-existing knee pain – a separate injury from her SIRVA. Similarly, her call to her PCP on October 11, 2021, with generalized complaints including "muscle aches," not left shoulder pain specifically, does not preclude a finding of Table onset – especially in light of the fact that Petitioner still sought care for left shoulder pain within three days of this call when her home remedies proved unsuccessful. *See,* e.g., Ex. 2 at 1.

In addition, the filed medical record establishes that Petitioner affirmatively and repeatedly linked her shoulder pain to the subject vaccine – beginning with the October 14th treatment encounter, at which time she noted that her shoulder pain began "after getting [her] immunizations [sic] done a couple of weeks ago." Ex. 3 at 12. This reporting provides further support for Table onset. Other subsequent medical and/or acupuncture records describe onset with more particularity, noting that her left shoulder pain had an "[i]nsidious onset after receiving [her] shot" and, most persuasively, that she "received a vaccine [on] 9/30/2021 . . . . Immediately following the shot [she] had so much pain [she] couldn't move [her] arm." Ex. 4 at 5; Ex. 5 at 2. More so, such entries corroborate the

contention made in Petitioner's affidavit that her pain began within 48 hours of vaccination. Ex. 2 at 1.

Although some of Petitioner's records suggest an onset beginning at some unspecified time in October 2021, I do not find this evidence preponderates against a favorable onset finding. *See* Ex. 13 at 33 (an April 12, 2022 report of "left-sided shoulder/neck pain since October"); Ex. 6 at 5 (a May 27, 2022 report of "left-sided shoulder and neck pain since October 2021" and that "she was given a vaccine in her [left] deltoid which became swollen, reddened, and exquisitely tender."). In fact, Petitioner still related her pain as beginning after her receipt of the vaccine in question. Ex. 6 at 5. These records are thus consistent with her other general reports of pain beginning after her subject vaccination. *See,* e.g., Ex. 7 at 11, 17.

### Conclusion and Scheduling Order

Petitioner has provided preponderant evidence that the onset of her shoulder pain occurred within 48 hours of vaccination.

I will note, however, that Respondent's remaining objection to a Table SIRVA[5] (not discussed in this Ruling) *could* ultimately require more evaluation. I thus *strongly* encourage the parties to promptly attempt an informal resolution of this claim before expending any further litigative resources on the case. If at any time informal resolution appears unlikely, given that the claim has been pending in SPU for over one year (having been assigned in August 2023), the parties should propose a method for moving forward, i.e., with a proposed briefing schedule or otherwise stating how they wish to proceed.

I will also encourage that Petitioner's settlement demand should contemplate the multiple gaps in Petitioner's treatment course – as such evidence is often deemed to show the mildness of the injury as the petitioner could handle the pain with conservative measures, only.

Accordingly, **by no later than Monday, March 17, 2025**, the parties shall file a joint status report confirming the date on which Petitioner conveyed, or intends to convey, a reasonable settlement demand and supporting documentation for Respondent's consideration.

---

[5] In disputing Petitioner's Table SIRVA claim, Respondent also argued that there are other conditions or abnormalities present (SLAP tear, biceps tendinosis, and/or grade 3 chondral lesion of the central glenoid with fraying of the labrum) that could explain her post-vaccination symptoms independent of the subject vaccination. Respondent's Report at 15-16 (citing Ex. 13 at 6, 23).

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master